IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN SEWARD | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )No. 1:20-cv-9251 |
| | )JURY TRIAL |
| DET. CAMILO R. ANTONINI, Badge No. D111; | )DEMANDED |
| DET. SGT. SEAN J. FEGAN, Badge No. DS001; | ) |
| P.O. ROBERT G. PUFF, Badge No. 2154; | ) |
| THE CITY OF MOUNT VERNON; SGT. JOSE | ) |
| QUINOY, Badge No. 11; P.O. PATRICK KING, | ) |
| Badge No. 2113; P.O. SEBASTIAN SALAZAR, | ) |
| Badge No. 2148; P.O. ROBERT F. KRESSMAN, | ) |
| Badge No. 2114; P.O. MICHAEL HUTCHINS, | ) |
| Badge No. 2054; P.O. RAVIN PALMER, | ) |
| Badge No. 2136; P.O. JOSEPH VALENTE; | ) |
| POLICE COMMISSIONER SHAWN HARRIS; | ) |
| POLICE COMMISSIONER GLENN SCOTT; | ) |
| and unidentified Mount Vernon | ) |
| Police Department employees and officers, | ) |
|     Defendants. | |

## COMPLAINT

NOW COMES Plaintiff ALAN SEWARD and complaining of

DEFENDANTS CAMILO ANTONINI, SEAN J. FEGAN, ROBERT G. PUFF, THE

CITY OF MOUNT VERNON (hereinafter, "City"), JOSE QUINOY, PATRICK

KING, SEBASTIAN SALAZAR, ROBERT F. KRESSMAN, MICHAEL HUTCHINS,

RAVIN PALMER, JOSEPH VALENTE, POLICE COMMISSIONER SHAWN HARRIS,

POLICE COMMISSIONER GLENN SCOTT, and UNKNOWN MOUNT VERNON POLICE

DEPARTMENT EMPLOYEES AND OFFICERS, alleges as follows:

### Introduction

1.  The City of Mount Vernon, through members of the Mount

Vernon Police Department, including Defendants Camilo Antonini,

Sean J. Fegan, Robert G. Puff, the other Defendant Officers, and other members of the Mount Vernon Police Department, routinely engages in a range of illegal conduct against the city's majority Black residents.  This misconduct includes fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, and using excessive force against citizens, particularly Black citizens.

2.   Of these illegal practices, one of the most shocking is the routine use of illegal strip searches and visual and physical body cavity searches[1] of Mount Vernon's citizens, particularly Black citizens, in violation of the law and in violation of the City of Mount Vernon's own purported policies.

3.   The United States Constitution requires that all searches be reasonable.  The United States Constitution requires that, to justify the strip search of an arrestee, law enforcement officials must point to specific, objective facts and rational inferences that establish particularized reasonable suspicion for that arrestee.  The standard for visual body cavity searches is even higher:  law enforcement must have a "specific, articulable factual basis supporting a reasonable

---

[1] A "strip search" occurs when a suspect is required by law enforcement to remove his clothes. A "visual body cavity search" is one in which the police observe the suspect's body cavities without touching them.  A "manual body cavity search" or a "physical body cavity search" includes some touching or probing of a body cavity that causes a physical intrusion beyond the body's surface.

suspicion to believe the arrestee secreted evidence inside a body cavity." That is because courts have long recognized that, while strip searches are "uniquely intrusive," visual body cavity searches are "invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity." Finally, to justify the most invasive of the three types of searches – a manual or physical body cavity search – law enforcement must have probable cause and a warrant if no exigency exists, and must conduct the invasive body cavity search in private in a safe, medically proper, and hygienic manner.

4. Invasive and degrading searches, whether strip or body cavity searches, "cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects persons suspected of certain crimes to these procedures." Yet this is just what the City of Mount Vernon has done, not only for all arrestees charged with narcotics offenses, but also for those charged with non-narcotic crimes as well as violations, including such minor violations as loitering. This is not only illegal, but intolerable.

5. These illegal strip and/or body cavity searches are routinely conducted in public spaces such as the back of an unmarked police car on a public street; in private homes in view of or in close proximity to others, including members of the

opposite sex, family members, and even children; and at the police department.  They are conducted in connection to arrests for violations, misdemeanors, and felonies.  They are conducted in connection with non-violent offenses, some of which are drug-related and some of which are not.  These factors exacerbate the already invasive and degrading nature of these searches.

6.   Despite the clear legal requirements for strip or body cavity searches, and the Mount Vernon Police Department's own written policy setting forth numerous, specific, particularized limits on the use of strip and/or body cavity searches, the Defendant Officers and other MVPD Officers routinely strip and/or body cavity search detainees and arrestees without any semblance of the legal prerequisites necessary to support these invasive and demeaning searches and in the absence of the necessary preconditions required to make them safe and private.

7.   Conducting strip and/or body cavity searches on persons, including Plaintiff, without particularized suspicion borne of the facts on an individual case, is humiliatingly invasive, degrading, unconstitutional, and flatly prohibited by settled law.

8.   Alan Seward brings this civil rights action pursuant to the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1982, and the New York State Constitution.  Mr. Seward seeks redress for Defendants'

4

deprivation, under color of state law, of his rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of New York.

## Jurisdiction and Venue

9.   This action arises under the Fourth and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the New York State Constitution and laws of the State of New York.

10.   This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

11.   Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, all of the parties reside in the Southern District of New York, and the events giving rise to the claims asserted herein all occurred within this district.

## Parties

12.   Plaintiff Alan Seward is a 48 year old African-American man who is a lifelong resident of Mount Vernon, New York.

13.   Defendant Detective Camilo Antonini is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

14.   Defendant Detective Sergeant Sean J. Fegan is a duly sworn police officer of the MVPD at all times relevant to this

action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

15.   Defendant Police Officer Robert G. Puff is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

16.   Defendant Sergeant Jose Quinoy is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

17.   Defendant Police Officer Patrick King is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

18.   Defendant Police Officer Sebastian Salazar is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

19.   Defendant Police Officer Robert F. Kressman is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

20.   Defendant Police Officer Michael Hutchins is a duly sworn police officer of the MVPD at all times relevant to this

action, acting under color of law and within the scope of his
employment as a Mount Vernon police officer.

21.   Defendant Police Officer Ravin Palmer is a duly sworn
police officer of the MVPD at all times relevant to this action,
acting under color of law and within the scope of his employment
as a Mount Vernon police officer.

22.   Defendant Police Officer Joseph Valente is a duly
sworn police officer of the MVPD at all times relevant to this
action, acting under color of law and within the scope of his
employment as a Mount Vernon police officer.

23.   Defendant City of Mount Vernon is a New York municipal
corporation, duly organized and existing under and by virtue of
the laws of the State of New York, with its principal place of
business in Mount Vernon, New York.

24.   Defendant City of Mount Vernon maintains the City of
Mount Vernon Police Department (MVPD), a duly authorized public
authority and/or police department, authorized to perform all
functions of a police department as per the applicable sections
of the aforementioned municipal corporation, City of Mount
Vernon.

25.   Defendant Police Commissioner Shawn Harris was a duly
sworn police officer of the MVPD at all times relevant to this
action, acting under color of law and within the scope of his
employment as the Mount Vernon Police Commissioner.

26.   Defendant Police Commissioner Glenn Scott is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as the Mount Vernon Police Commissioner.

27.   Unidentified MVPD Officers and Employees are current and/or former employees, officers, and/or supervisors of the Mount Vernon Police Department who at all relevant times were acting under color of law and within the scope of their employment.

28.   Collectively, Defendants Antonini, Fegan, Puff, Quinoy, King, Salazar, Kressman, Palmer, Harris, Scott and the Unidentified MVPD Officers and Employees are referred to herein as the "Defendant Officers."   Each of the Defendant Officers is sued in his, her, and/or their individual capacities.

29.   At all times hereinafter mentioned, the Defendant Officers, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the City of Mount Vernon.

30.   Each and all of the acts defendants alleged herein were done by said defendants while acting within the scope of their employment by Defendant City of Mount Vernon.

**Alan Seward Is Falsely Arrested, Illegally Strip and Body Cavity
Searched Three Separate Times, and Maliciously Prosecuted
The November 7, 2017 Search of Kierra Thompson's Apartment**

31.   On November 7, 2017, Defendants Antonini, Fegan, Puff,
Quinoy, Hutchins, Salazar, and Palmer executed a search warrant
at 156 South First Avenue, Apartment 4N, Mount Vernon, New York.
Named on the search warrant was "Alan D. Thompson, a/k/a "Budda
Bless", D.O.B. 3/17/1972, Black Male, 45 YOA, Brown Skin, Med
Build, 5' 08'' tall, and Bald Head." Plaintiff's legal name is
Alan Dwight Seward.  His father's name is Alan Thompson.

32.   At the time of the execution of the search warrant,
Plaintiff Alan Seward's adult daughter, Kierra Thompson, was the
leaseholder of Apartment 4N at 156 South First Avenue, Mount
Vernon, New York.  Ms. Thompson resided at the apartment with
her two minor children.  Plaintiff Alan Seward did not reside in
the apartment, although he had been in the apartment before to
babysit his grandchildren.  On November 7, 2017, Mr. Seward
resided at 540 North Terrace Avenue, Mount Vernon, New York.

33.   On information and belief, any affidavit submitted in
support of a search warrant application was based on false
information and lacked probable cause to support a warrant to
search 156 South First Avenue, Apartment 4N or "Alan D.
Thompson".

34.   The Defendant Officers executed the search warrant by
forcing open the apartment door and entering with guns drawn,

9

terrorizing the women and children (including Mr. Seward's daughter and young grandchildren, who were then aged about 10 and 8 years old) inside.

35.  The women were handcuffed and subjected to pat down searches.

36.  The officers searched the apartment and, on information and belief, found no drugs or contraband.

37.  Ms. Thompson was detained, handcuffed in her apartment for more than 60 minutes.

38.  Having not located any person matching the description on the search warrant or any drugs or contraband, several officers left the apartment and went to Bungalow Bar, a bar located at 523 South Fulton Avenue, Mount Vernon, NY, where they believed they would find Mr. Seward.

**Mr. Seward's November 7, 2017 False Arrest**

39.  Upon information and belief, the officers who went to the Bungalow Bar included Defendant Antonini, though Defendant Puff swore in his incident report that Defendant Antonini remained in the apartment while he and Defendants Quinoy, King, Hutchins, and Valente went to the Bungalow Bar.

40.  That night, sometime after 8pm, Mr. Seward was playing pool at the Bungalow Bar.  At least three men in plain clothes

entered the bar, proceeded to the pool table, and, without identifying themselves as law enforcement officers, accosted and grabbed Mr. Seward.  Mr. Seward began to fight back against what he believed was an unprovoked assault when the men identified themselves as Mount Vernon Police Officers.  Mr. Seward then fully complied with the officers' commands; his hands were handcuffed behind his back and he was led out of the bar to an unmarked police car parked outside, on the public street down the street from the Bungalow Bar, at or near 527 S. Fulton Ave., Mount Vernon, New York.

41.  Defendant Officer(s) confiscated a personal use amount of marijuana and cash from Mr. Seward's person.  The marijuana was never vouchered and only a portion of the money confiscated from Mr. Seward was vouchered ($805.00).  Upon information and belief, rather than voucher the remaining cash or the marijuana confiscated from Mr. Seward, one or more Defendant Officers instead stole the remaining cash and marijuana.

42.  When asked by the Defendant Officers, Mr. Seward repeatedly denied possessing any drugs other than the personal use amount of marijuana confiscated from him.

### Mr. Seward is Illegally Strip and Visually and Manually Body Cavity Searched Three Times

43.  Upon arriving at the unmarked police car, the arresting officers including, on information and belief,

11

Defendant Antonini, pushed Mr. Seward, still handcuffed, into the back of the unmarked police car and caused him to become immobilized with his head and shoulders stuck inside the car, between the back of the front passenger seat and the cushion of the rear seat, while the lower portion of his body was outside of the car on the public street.  He was unable to move.  The car door was open.

44.  One of the officers, believed to be Defendant Antonini, then reached around the front of Mr. Seward's body, unbuckled his belt, and pulled down Mr. Seward's pants and boxer shorts.  Mr. Seward feared that he was going to be raped, tried unsuccessfully to move out of Defendant Antonini's grasp, and yelled for Defendant Antonini to stop.  The officer then used his hands to spread Mr. Seward's naked buttocks apart and look inside of his anus.  In doing so he exposed Mr. Seward's nude lower body, genitals, and buttocks to anyone and everyone who was present on the street.

45.  Mr. Seward was then moved by one of the Defendant Officers to a seated position and was transported, handcuffed, to his daughter's apartment, where he was brought inside.

46.  Mr. Seward, still handcuffed, was then taken to the bathroom in his daughter's apartment.  Defendant Antonini was in the bathroom with Mr. Seward while another unknown Defendant Officer stood in the open doorway of the bathroom.  Defendant

Antonini then strip and body cavity searched Mr. Seward again, by pulling his pants and underwear down and commanding him to squat and cough.  Defendant Antonini then commanded Mr. Seward to bend over while Defendant Antonini again manually spread Mr. Seward's buttocks.  As a result, Mr. Seward's buttocks, anus, and genitalia were exposed to Defendant Antonini and others.

47.  Mr. Seward objected to the search and asked the officers why he was being searched again, since the prior search in the back of the unmarked police car had revealed no drugs or other contraband.  His objections were ignored.

48.  Defendant Antonini left the bathroom.  He then returned to the area of the bathroom and informed Mr. Seward that he had found "ten grams" of crack cocaine in the apartment. Mr. Seward accused Defendant Antonini of planting the drugs and, in response, Defendant Antonini punched Mr. Seward in the face.

49.   Defendant Antonini threatened that he would arrest Mr. Seward's daughter if Mr. Seward did not take responsibility for the drugs, and in order to protect his daughter from a false arrest, Mr. Seward falsely accepted responsibility for the drugs.

50.  Although the drugs were allegedly found in the apartment, Defendant Puff's sworn incident report claims that the drugs were found on Mr. Seward's person at the Bungalow Bar and, further, that Mr. Seward stated, prior to arriving at the

apartment, "Anything you find in the apartment is mine, I don't want anyone else getting in trouble for my mistakes".

51. The Defendant Officers then removed the handcuffs from Ms. Thompson and left the apartment with Mr. Seward. Ms. Thompson was not charged with any crime.

52. Mr. Seward was then taken to the Mount Vernon Police Department, where he was strip searched for a third time. On this occasion, Mr. Seward's handcuffs were removed by an unknown officer and Mr. Seward was placed in a cell at the Mount Vernon Police Department where he was directed to remove each article of clothing, shake it out, and set it aside. Mr. Seward was first directed to remove and then replace his top, and then he was directed to remove his shoes, socks, pants, and underwear, which he did. He was then directed to turn around, lift his genitals, squat, and cough. Mr. Seward objected that he had already been searched twice but was told he had to comply, and so he did. As a result, his buttocks, anus, and genitals were exposed to the unknown officer.

53. None of the three searches to which Mr. Seward was subjected led to the discovery of any drugs, weapons, or contraband.

54. Following the third strip search, Defendant Antonini met with Mr. Seward in a small interview room, where he asked Mr. Seward to be a confidential informant for him in exchange

14

for being allowed to leave the police station without any
criminal charges and with the drugs that Defendant Antonini had
allegedly found in the apartment.  Mr. Seward refused and
Defendant Antonini punched Mr. Seward in the face a second time,
after which Mr. Seward was processed and falsely charged with
felony narcotics possession.

### Mr. Seward's Malicious Prosecution

55.  In connection with the events of November 7, 2017, Mr.
Seward was falsely charged by a felony complaint with Criminal
Possession of a Controlled Substance in the Third Degree in
violation of PL 220.16, a B felony.  The felony complaint was
dated November 8, 2017, and sworn to by Defendant Puff.  As
described above, contrary to the felony complaint, Mr. Seward
did not possess drugs on November 7, 2017.  Mr. Seward has at
all times denied the allegations in this first felony complaint,
asserts that the claims contained in the first felony complaint
are false, and that Defendant Puff knew they were false when he
swore out the complaint.

56.  At his arraignment, Mr. Seward pleaded not guilty and
was released on his own recognizance.  He returned to court for
every appearance until he learned that his mother was terminally
ill with cancer.  Mr. Seward did not return to court thereafter,
fearing that he would be sent to prison for a crime he did not
commit and would not see him mother during her illness or prior

to her death.  Immediately following his mother's funeral, Mr.
Seward turned himself in.

57.   Subsequent to his flight, Mr. Seward was charged in a
second felony complaint with Criminal Sale of a Controlled
Substance in the Third Degree in violation of PL 220.39, a B
felony.  This felony complaint alleged that, "at about October
19, 2017, at approximately 3:00 pm . . . Alan Thompson aka Alan
Seward 540 N. Terrace Ave., Mt. Vernon, NY 10552" sold two clear
plastic knotted twists containing crack cocaine to an undercover
officer in exchange for $40.00 in front of 156 South 1st Avenue,
Mount Vernon, New York.  This second felony complaint was sworn
to by Defendant Antonini and dated April 24, 2018.

58.   Mr. Seward has at all times denied having sold drugs
on or about October 19, 2017 and asserts that the sworn
allegations contained in this second felony complaint are also
false, and that Defendant Antonini knew them to be false when he
swore out the complaint.

59.   On May 7, 2018, two weeks after the false complaint
against Mr. Seward was sworn to by Defendant Antonini, the
Westchester County District Attorney's Office issued a press
release announcing 22 arrests in a "multi-jurisdiction drug
sweep," identifying the arrestees by name and including ten
mugshots under the word "WANTED".  Mr. Seward's photograph was
included among these mugshots.  This press release remains on

16

the website of the Westchester County District Attorney's Office.[2]

60.   In addition to the press release, former Mount Vernon Mayor Richard Thomas held a press conference announcing the arrests. This press conference was streamed live on Facebook and was also replayed on local news stations. A video recording of the press release remains online.[3]

61.   During the press conference, Mayor Thomas explained that the arrests were part of "Operation Crackdown" and were the result of a yearlong investigation by various law enforcement agencies, including the Mount Vernon Police Department.

62.   During his commentary, Mayor Thomas repeatedly connected the low level drug transactions with which Mr. Seward and others were charged with acts of terrorism against the United States, referencing the then-recent terrorist attack on New York City's West Side Highway that killed 8 and injured 11.

---

[2] *See* https://www.westchesterda.net/may-2018/3387-mount-vernon-police-department-announces-arrests-in-multi-jurisdiction-drug-sweep
[3] *See* https://www.facebook.com/watch/live/?v=601079950246470&ref=watch_permalink

63.  Defendant Antonini and other MVPD officers stood behind Mayor Thomas and Commissioner Harris while they spoke.



64.  By this press conference, Mr. Seward's likeness was publicized in connection with Operation Crackdown.

65.  These false and inflammatory statements, together with the publication of Mr. Seward's likeness in association with these false statements and false charges, caused grave harm to Mr. Seward's reputation and caused Mr. Seward to experience emotional distress.

66.  Mr. Seward's mother's funeral was on or about October 12, 2019, and he turned himself in shortly thereafter.  On October 17, 2019, Mr. Seward was charged in a third felony complaint with Bail Jumping in the Second Degree, in violation of PL 215.56, an E Felony, after he failed to return to court.

67.   Approximately one month later, Mr. Seward was released on bail.  Thereafter he returned to court for each and every appearance until his case was resolved.

68.   On January 21, 2020, Mr. Seward's three pending cases terminated when he pleaded guilty to the sole charge of Bail Jumping in the Third Degree, in violation of PL 215.55 an A misdemeanor.

**Defendant City of Mount Vernon Has For Decades Ignored the Pattern of Illegal Strip and Body Cavity Searches, False Arrests, and Malicious Prosecutions, Instead Rewarding Officers Engaged in this Illegal Conduct**

69.   Defendant City of Mount Vernon has long been on notice about the illegal misconduct of MVPD officers and employees, including Defendants Antonini, Fegan, and Puff.  This illegal misconduct includes, as here, illegally strip and body cavity searching arrestees, fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, and using excessive force against citizens, particularly Black citizens.

70.   With respect to the routine, illegal strip and body cavity searches of arrestees, MVPD's official policy regarding searches of arrestees could not be more different than what goes on in practice.  The MVPD policy governing the search of arrested persons (Procedure No. 3.045), issued on January 4, 1993, provides, in relevant part:

a. "a person arrested will not be subject to a full strip search unless there is a rational basis for doing so";

b. "The Desk Officer or supervisor present will decide if a strip search should be conducted and is responsible that the search is conducted properly";

c. "A 'Strip Search' will be utilized when the arresting officer reasonably suspects that weapons, contraband or evidence may be concealed upon the person or in their underclothing, in such a manner that they may not be discovered by the previous search methods.  Other factors that should be considered in determining the necessity for a 'Strip Search' include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches."

d. "A 'Strip Search' will be conducted by a member of the same sex as the arrested person in a secure area in outermost privacy and with no other arrestee present.  It should not be necessary to touch the subject's body, except for the examination of the hair."

e. "If a 'Strip Search' is conducted, such information will be entered under 'Details' in the Arrest Book. A subsequent 'Strip Search' will not be conducted unless there is reasonable belief that the subject has acquired a weapon or contraband."

f. "Under no condition shall a 'Body Cavity Search' be conducted by any Member of the Department. As a general rule, a warrant must be obtained before a 'Body Cavity Search' is performed. For a 'Body Cavity Search' to be justified, there must be more than a mere chance of finding something. The standard to be applied is "reasonableness' on the facts. Only where the arrestee or police officer would clearly be in danger or if there was a clear indication that evidence would be destroyed, should a 'Body Cavity Search' be conducted.

g. "Compelling, exigent circumstances must be presented before the warrant requirement can be waived."

h. "Due to availability of judges in Mount Vernon, a warrant will be obtained before a 'Body Cavity Search' is conducted.

i. "A 'Body Cavity Search' must be conducted by a medical doctor in privacy, in an examining room

(doctor's office, hospital) so as to insure hygienic
surroundings and minimal discomfort."

j. "If a 'Body Cavity Search' is considered necessary,
the Duty District Attorney and Captain will be
advised and their instructions complied with and
entered in the Arrest Book."

71.  But this policy is regularly and routinely disregarded
and the City has long been on actual and/or constructive notice
that MVPD officers including the Defendant Officers routinely
conduct illegal strip and/or body cavity searches of detainees
and arrestees in Mount Vernon.

72.  As far back as 1999, if not earlier, an illegal strip
search conducted by members of the MVPD Narcotics Squad of the
MVPD – the same MVPD division to which defendants Antonini,
Fegan, and Puff belong – gave rise to a successful civil rights
lawsuit.  *See Flores v. City of Mount Vernon, et al.,* 41 F.
Supp.2d 439 (1999).  Since then, numerous civil rights lawsuits
have alleged illegal strip and body cavity searches by Mount
Vernon Police Department Officers, including defendants
Antonini, Fegan, and Puff.  *See, e.g., Scott v. City of Mount
Vernon et al.*, 14 CV 4441 (SDNY) (Members of a single family
alleged that defendant Antonini and other members of the Mount
Vernon Police Department unlawfully entered their home, detained
them without reason, and unlawfully strip searched one member of

the family.  This case was settled for $175,000.[4]); *Williamson v. Mount Vernon Police Dept. et. al.*, 15 CV 5635 (S.D.N.Y. 2015), (pro se complaint alleging Defendants Antonini, Fegan, and others conducted illegal physical body cavity searches on him in an apartment following an illegal arrest); *Rutherford and Gallman v. City of Mount Vernon, et al.,* 18-cv-10706 (same); *Long v. City of Mount Vernon*, 18-cv-09068 (same).

73.  The City has also long been on actual and/or constructive notice that MVPD officers including the Defendant Officers routinely fabricate crimes, falsify reports, illegally detain individuals who have committed no crime, and use excessive force against citizens, particularly Black citizens.

74.  Pending and settled civil rights cases have alleged just this type of misconduct.  In addition to *Scott*, described above, examples include:  *Nunez v. City of Mount Vernon et al.*, 14 CV 08530 (SDNY) (Two brothers allege they were wrongly arrested and beaten by Mount Vernon Police Department Officers. This case was settled for $250,000.); *Fonseca v. City of Mount Vernon et al.*, 5459/2013 (N.Y. Sup.)(An individual alleged false arrest, malicious prosecution and excessive force.  This case was settled for $75,000.);  *Giles v. City of Mount Vernon et*

---

[4] Ernie Garcia, "Mount Vernon to pay $175,000 in alleged home invasion", LoHud.com, Aug. 16, 2017, https://www.lohud.com/story/news/local/westchester/mount-vernon/2017/08/16/strip-search/570586001/

*al.,* 20 CV 5119(2020)(Plaintiff alleges that defendant Antonini, together with others, framed him for a narcotics offense, criminal charges that were ultimately dismissed.); *Govan v. City of Mount Vernon, et al.,* 19 CV 8830 (S.D.N.Y.)(Plaintiff alleges that defendant Antonini, together with others, framed him for a narcotics offense, falsely arrested and maliciously prosecuted him, and used excessive force against him.)

75.  Defendant City of Mount Vernon has also received numerous complaints by civilians about illegal strip and/or body cavity searches through formal and informal channels, as well as complaints about MVPD officers fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, and using excessive force against citizens.[5] These complaints, made over years, demonstrated a clear and obvious pattern of the type of misconduct at issue in this case.

76.  Recent media reports document the common practice of the MVPD's illegal strip and/or body cavity searches.  In one recent article, Defendant Fegan defends the strip and body cavity searches at issue in *Rutherford and Gallman v. Mount Vernon*, *et al.,* 18-cv-10706, in which MVPD video recordings show MVPD officers, including defendants Antonini, Puff, and Fegan,

---

[5] *See* George Joseph*,* "Corruption and Brutality Allegations Against Mount Vernon Detective Are Echoed by Civilian Complaints", GOTHAMIST, March 11, 2020, https://gothamist.com/news/corruption-and-brutality-allegations-against-mount-vernon-detective-are-echoed-civilian-complaints.

strip and visual body cavity search a handcuffed individual in an apartment.  According to the article, "Fegan, the supervisor on scene during the operation, defended the officers' actions. He argued that the searches recorded on video were strip searches with 'visual inspections.'  He said police have conducted these kinds of searches at search warrant locations for as long as he could remember.  But when pressed about Mount Vernon's police rules, which say strip searches should be conducted inside police facilities, Fegan declined comment."[6]

77.  In addition to the above, the undersigned has also spoken with numerous individual residents of Mount Vernon who have described being required to submit to strip and/or body cavity searches while detained by MVPD officers, including Defendants Antonini, Fegan, and Puff, and upon arrest by Mount Vernon Police Department officers, including Defendants Antonini, Fegan, and Puff.

78.  Defendants know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting strip and/or

---

[6] *See* George Joseph, "The Mount Vernon Police Tapes:  In Secretly Recorded Calls, Officers Allege Beatings in Custody and Illegal Strip Searches," GOTHAMIST, Sept. 1, 2020, https://gothamist.com/news/mount-vernon-police-tapes-secretly-recorded-calls-officers-allege-beatings-custody-and-illegal-strip-searches.

visual body cavity searches without particularized reasonable suspicion.

79.   Defendants further know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting physical body cavity searches without probable cause and/or a warrant, or an exigent circumstance, and may not do so except if they are conducted in private in a safe, medically proper, and hygienic manner

80.   Despite having been put on notice of the common use of illegal strip and body cavity searches of, and other misconduct against, citizens by these complaints and lawsuits, the City of Mount Vernon ignored the existence of a clear pattern of illegal conduct, and did not recommend discipline for any of the subject officers.

81.   In addition, supervisors within the Department, specifically Defendant Fegan, had knowledge of the repeated complaints of strip and body cavity searches and other misconduct.  Indeed, as Defendant Fegan admitted to a journalist, he was present for countless illegal strip and body cavity searches.

82.   In fact, numerous illegal strip and body cavity searches were conducted at the Mount Vernon Police Department, where supervisors were knowledgeable of the illegal searches.

83.   Indeed, upon information and belief, many of these illegal searches were video recorded by the MVPD.

84.   Defendants know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting strip and/or visual body cavity searches without particularized reasonable suspicion.

85.   Defendants further know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting physical body cavity searches without probable cause and/or a warrant, or an exigent circumstance, and may not do so except if they are conducted in private in a safe, medically proper, and hygienic manner

86.   Despite their knowledge of these illegal searches and other misconduct, policymakers took no action to train, supervise, or discipline the officers who committed these knowingly illegal searches.

87.   Instead, certain of the Defendant Officers were rewarded with promotions for their aggressive police tactics and jobs well-done by their Supervisors.

88.   Despite such notice, Defendant City failed to take corrective action.  This failure caused the officers in the present case to violate Plaintiff's civil rights.

27

89.  Moreover, Defendant City was aware, prior to
plaintiff's arrests, that the individual defendants lacked the
objectivity, temperament, maturity, discretion, and disposition
to be employed as police officers.  Despite such notice,
Defendant City retained these officers, and failed to adequately
train and supervise them.

90.  In particular, Defendant City was also aware from
numerous complaints, lawsuits, and from public sources,
including recorded conversations of MVPD officers that were
provided to MVPD, that Defendant Antonini was, *inter alia*, known
to have unlawfully strip searched arrestees, fabricated
evidence, planted narcotics, coerced false identifications,
acted in a racist and discriminatory manner, used excessive
force, and generally engaged in misconduct in other cases and
arrests, yet MVPD continued to employ Defendant Antonini and
failed to take any a  corrective action despite such notice.

91.  As a direct result of the aforementioned failures,
Plaintiff's rights were violated.

92.  All of the aforementioned acts of Defendants, their
agents, servants, and employees were carried out under the color
of state law.

93.  The acts complained of were carried out by the
aforementioned individual defendants in their capacities as

28

police officers, with the entire actual and/or apparent
authority attendant thereto.

94.    Defendants, collectively and individually, while
acting under color of state law, engaged in conduct that
constituted a custom, usage, practice procedure, or rule of the
respective municipality/authority, which is forbidden by the
Constitution of the United States.

### Mount Vernon's Policies and Widespread Practices

95.    The constitutional violations that caused Alan
Seward's illegal strip and body cavity searches, false arrest,
and malicious prosecution were not isolated events.  To the
contrary, they were the result of the City of Mount Vernon's
policies and widespread practices of illegally strip and body
cavity searching detainees and arrestees, falsely arresting
innocent people, planting evidence, and falsifying police
reports and other official documents.

96.    The constitutional violations that caused Alan
Seward's illegal strip and body cavity searches, false arrest,
and malicious prosecution were the result of the City of Mount
Vernon's policies and widespread practices of failing to
adequately train and supervise MVPD employees on their
obligations not to illegally strip and body cavity search
detainees and arrestees, falsify and plant evidence, fabricate

and falsify official documents, and falsely arrest, or
maliciously prosecute individuals.

97.   These constitutional violations were also the result
of the City's policies and widespread practices of failing to
discipline officers who illegally strip and body cavity search
detainees and arrestees, falsify and plant evidence, fabricate
and falsify official documents, and falsely arrest, or
maliciously prosecute individuals.

98.   The constitutional violations that caused Alan
Seward's illegal strip and body cavity searches and the claims
set forth in this Complaint were also the result of the City's
policies and widespread practices of failing to intervene to
prevent individual employees from violating citizens'
constitutional rights.

99.   In accordance with these policies and widespread
practices, City employees refused to report misconduct committed
by their colleagues, including the misconduct at issue in this
case.

100. The City's failure to train, supervise, and discipline
its officers and employees effectively condones, ratifies, and
sanctions the kind of misconduct that the Defendant Officers
committed against Alan Seward in this case.  Constitutional
violations such as those that occurred in this case are

encouraged and facilitated as a result of the City's practices and policies, as alleged above.

101. The City and their employees failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct.  They thereby perpetuated the unlawful practices and ensured that no action would be taken to remedy Mr. Seward's ongoing injuries.

102. The policies and practices described in the foregoing paragraphs were consciously approved by City policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

## Plaintiff's Damages

103. As a result of his illegal strip and body cavity searches and his false arrest and malicious prosecution, Mr. Seward suffered emotional distress, anxiety, humiliation, shame and terror, as well as reputational harm.

104. Mr. Seward is now fearful of people, particularly police officers or those he suspects to be undercover police officers.  He is afraid that he can be arrested for no reason at all, and can suffer public, intrusive bodily searches as a result of such false arrests.  Indeed, Mr. Seward's fear of further abuse by the Defendant Officers or other MVPD officers that he left his lifelong home of Mount Vernon and moved to the

Bronx, in order to avoid being in the same area as Defendant
Officers.

105. Mr. Seward's false arrest and malicious prosecution
also caused him to be unable to properly care for his mother
when she was dying of cancer.  The false criminal charges in
this case left Mr. Seward unable to be with his mother during
her time of need.

106. The incidents described above also caused Mr. Seward
to become estranged from his family, including his daughter, who
witnessed these humiliating events, and other members of his
family who wrongly believed that he had committed a crime when
he had not.  This was particularly damaging because, although
Mr. Seward had committed narcotics-related offenses when he was
younger, he had truthfully told family members that he was no
longer engaged in any criminal conduct.

107. As a result of the foregoing, Plaintiff Alan Seward
has suffered emotional, psychological, and reputational damages,
all caused by the Defendant Officers' misconduct.

### Count I – 42 U.S.C. § 1983
### Fourth Amendment/Illegal Search and Seizure

108. Each Paragraph of this Complaint is incorporated as if
restated fully herein.

109. As described in the preceding paragraphs, the conduct
of the Defendant Officers, while acting individually, jointly,

and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, violated the Plaintiff's Fourth Amendment rights in that they seized Plaintiff without justification and without probable cause and conducted an illegal strip and body cavity searches of his body, which included the unlawful touching, and close observation of, his buttocks and genitalia.

110. As described in the preceding paragraphs, the Defendants violated Plaintiff's Fourth Amendment rights in that they seized Plaintiff without justification and without probable cause and conducted an illegal search of his body by touching his buttocks, and by strip searching him and visually body cavity searching him.

111. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

112. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

113. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

## Count II – 42 U.S.C. § 1983
### Excessive Force

114. Each Paragraph of this Complaint is incorporated as if restated fully herein.

115. As described in the preceding paragraphs, the conduct of the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, constituted excessive force in violation of the United States Constitution.

116. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

117. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

118. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

## Count III – 42 U.S.C. § 1983
### False Arrest/Unlawful Imprisonment

119. Each Paragraph of this Complaint is incorporated as if restated fully herein.

34

120. As described in the preceding paragraphs, the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, falsely arrested and unlawfully detained Alan Seward.

121. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

122. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

123. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

## Count IV – 42 U.S.C. § 1983
### Malicious Prosecution

124. Each Paragraph of this Complaint is incorporated as if restated fully herein.

125. As described in the preceding paragraphs, the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment,

caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for narcotics crimes for which there was no probable cause.  These judicial proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

126. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

127. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

128. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

## Count V – 42 U.S.C. § 1983
### Violation of a Right to Fair Trial

129. Each Paragraph of this Complaint is incorporated as if fully restated herein.

130. Defendant Officers created false evidence against Plaintiff and withheld exculpatory evidence against Plaintiff.

131. Defendant Officers forwarded this false evidence to, and withheld exculpatory evidence from, the Westchester County

District Attorney's Office to be used against Plaintiff in legal proceedings, and it was used to perpetuate the proceedings against him.

132. As a result of Defendants' creation and use of false evidence, and withholding of exculpatory evidence, Plaintiff was deprived of his liberty and suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution.

133. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

134. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employers, City of Mount Vernon, are liable for their actions.

### Count VI - 42 U.S.C. § 1983
### Failure to Intervene

135. Each Paragraph of this Complaint is incorporated as if restated fully herein.

136. In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

37

137. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's innocence.

138. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

139. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

**Count VII — 42 U.S.C. § 1983**
**Section 1983 Monell Claim**

140. Each Paragraph of this Complaint is incorporated as if fully restated herein.

141. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

142. As described in detail above, the City of Mount Vernon is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies,

practices, and customs of the City of Mount Vernon as well as by the actions of policy-making officials for the City.

143. At all times relevant to the events described in this Complaint and for a period of time prior thereto, the City had notice of a widespread practice by their officers and agents of illegally and intrusively searching individuals without cause, using excessive force against individuals, manufacturing false evidence, suppressing exculpatory evidence, and instigating false criminal charges, including the falsification of statements and reports, fabricating false evidence to implicate defendants in criminal conduct, and pursuing wrongful convictions through profoundly flawed investigations.

144. These widespread practices, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the City directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately screen, hire, retain, train, supervise, and control their officers, agents, and employees, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

145. The above widespread practices and customs, so well settled as to constitute *de facto* policies of the City, were able to exist and thrive, individually and together, because

39

policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

146. At all times relevant to the events described in this Complaint and for a period of time prior and subsequent thereto, the City failed to promulgate proper or adequate rules, regulations, policies, and procedures for the searching of detainees and arrestees; the collection, documentation, preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings. In addition or alternatively, the City failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the City, with respect to these subjects.

147. These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the City.

148. In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City or were

actually committed by persons with such final policymaking authority.

149. As a result of the policies and practices of the City, numerous individuals have been illegally and intrusively searched and wrongly prosecuted and imprisoned for, as well as convicted of, crimes that they did not commit.

150. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**Count VIII – 42 U.S.C. § 1983**
**Supervisory Liability**

151. Each Paragraph of this Complaint is incorporated as if fully restated herein.

152. Defendants Antonini, Fegan, Puff, Quinoy, Harris, Scott, and other unidentified supervisory MVPD employees and officers personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

153. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

## Supplemental State Law Claims

154. Each Paragraph of this Complaint is incorporated as if fully stated herein.

155. Within the time set forth by law, Plaintiff duly served upon, presented to and filed with the City of Mount Vernon, a Notice of Claim setting forth all facts and information required under the General Municipal Law 50-e.

156. More than 30 days have elapsed since Plaintiff's 50-h hearing and the City of Mount Vernon has made no offer of an adjustment or payment thereof.

157. This action was commenced within one year and ninety days after the causes of action herein accrued.

158. Plaintiff has complied with all conditions precedent to maintaining the instant action.

159. This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

## Count IX – New York State Law
## Battery

160. Each Paragraph of this Complaint is incorporated as if fully restated herein.

161. The Defendant Officers intentionally caused injury to Plaintiff as a result of his intended physical contact with Plaintiff.

162. The Defendant Officers' intentional physical contact with Plaintiff was offensive and wrongful under the circumstances.

163. Plaintiff did not consent to Defendant Officers' conduct.

164. Defendant Officers' offensive physical conduct toward Plaintiff was performed intentionally, recklessly, and/or with deliberate indifference to Plaintiff's rights and physical safety.

165. Defendant Officers' offensive physical conduct toward Plaintiff directly and proximately caused injuries to Plaintiff as set forth above.

166. Defendant City of Mount Vernon is liable for the tortious acts and omissions of Defendant Officers under the doctrine of *respondeat superior*.

### Count X – New York State Law
### Assault

167. Each Paragraph of this Complaint is incorporated as if fully restated herein.

168. The Defendant Officers, by their conduct and words, intentionally placed Plaintiff in fear of imminent harmful or offensive physical contact.

169. Plaintiff did not consent to Defendant Officers' conduct.

170. Defendant Officers' conduct and words, which placed Plaintiff in fear of imminent harmful or offensive physical contact, was performed intentionally, recklessly, and/or with deliberate indifference to Plaintiff's rights and physical safety.

171. Defendant Officers' offensive physical conduct toward Plaintiff directly caused trauma and emotional distress to Plaintiff.

172. Defendant City of Mount Vernon is liable for the tortious acts and omissions of Defendant Officers under the doctrine of *respondeat superior*.

## Count XI – New York State Law
## Unlawful Imprisonment

173. Each Paragraph of this Complaint is incorporated as if fully restated herein.

174. The Defendant Officers individually and in concert, arrested, confined, caused the confinement, and/or continued the confinement of Plaintiff without any privilege.

175. Plaintiff was conscious of his confinement and did not consent to it.

176. Defendant City of Mount Vernon is liable for the tortious acts and omissions of Defendant Officers under the doctrine of *respondeat superior*.

## Count XII — New York State Law
## Malicious Prosecution

177. Each Paragraph of this Complaint is incorporated as if fully restated herein.

178. The Defendant Officers initiated, commenced, and continued a malicious prosecution against Plaintiff.

179. Defendant City of Mount Vernon, as employer of the individually named Defendant Officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

180. Defendants caused Plaintiff to be prosecuted without probable cause until the charges were resolved in Plaintiff's favor in criminal court on or about January 21, 2020.

181. Defendants caused Plaintiff to be prosecuted without probable cause until the charges were resolved in Plaintiff's favor in criminal court on or about January 21, 2020.

## Count XIII — New York State Law
## Intentional, Reckless, or Negligent Infliction of Emotional
## Distress

182. Each Paragraph of this Complaint is incorporated as if fully restated herein.

45

183. Defendants intentionally and/or recklessly, and in breach of their duties owed to Plaintiff, directly and proximately caused Plaintiff to be illegally searched, falsely arrested, maliciously prosecuted, and wrongly imprisoned.

184. In the alternative, Defendants negligently and grossly negligently, and in breach of their duties owed to Plaintiff, directly and proximately caused Plaintiff to be illegally searched, falsely arrested, maliciously prosecuted, and wrongly detained.

185. Defendants caused Plaintiff to suffer harm, including fear for his physical safety and emotional distress.

### Count XIV – New York State Law
### Negligent Screening, Hiring, and Retention

186. Each Paragraph of this Complaint is incorporated as if fully restated herein.

187. Upon information and belief, Defendant City of Mount Vernon failed to use reasonable care in the screening, hiring and retention of the aforesaid defendants who illegally searched, falsely arrested, manufactured evidence against, and maliciously prosecuted Plaintiff.

188. Defendant City of Mount Vernon knew, or should have known in the exercise of reasonable care, the propensities of the Defendant Officers to engage in the wrongful conduct heretofore alleged in this Complaint.

## Count XV — New York State Law
## Negligent Training and Supervision

189. Each Paragraph of this Complaint is incorporated as if fully restated herein.

190. Upon information and belief, the Defendant City of Mount Vernon failed to use reasonable care in the training and supervision of the aforesaid Defendants, who illegally searched, falsely arrested, manufactured evidence against, and maliciously prosecuted the plaintiff.

## Count XVI — New York State Law
## Respondeat Superior Liability

191. Each Paragraph of this Complaint is incorporated as if fully restated herein.

192. Defendants were at all times material to this complaint as employees of the Mount Vernon Police Department, and acted within the scope of their employment in committing the misconduct described above.

193. Defendants' tortious conduct was undertaken while carrying out routine investigative functions.  The conduct was reasonably expected by, and in fact foreseen by, Defendants' employer.

194. Defendant City of Mount Vernon is liable as principal for all intentional torts committed by its agents.

**WHEREFORE**, Plaintiff, ALAN SEWARD, respectfully requests that this Court enter judgment in his favor and against

47

Defendants, CAMILO ANTONINI, SEAN J. FEGAN, ROBERT G. PUFF, CITY

OF MOUNT VERNON, JOSE QUINOY, PATRICK KING, SEBASTIAN SALAZAR,

ROBERT F. KRESSMAN, MICHAEL HUTCHINS, RAVIN PALMER, POLICE

COMMISSIONER SHAWN HARRIS, POLICE COMMISSIONER GLENN SCOTT and

unknown Mount Vernon Police Department employees and officers,

awarding compensatory damages and attorneys' fees against each

Defendant, punitive damages against each of the Defendant

Officers, as well as any other relief this Court deems just and

appropriate.

### JURY DEMAND

Plaintiff ALAN SEWARD hereby demands a trial by jury

pursuant to Federal Rule of Civil Procedure 38(b) on all issues

so triable.


                          RESPECTFULLY SUBMITTED,

                          /s/ Karen A. Newirth
                          LOEVY & LOEVY
                          Attorneys for Plaintiff
                          311 N. Aberdeen Street
                          Third Floor
                          Chicago, IL 60607
                          (718) 490-0028