# Exhibit G

```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE
 2              SOUTHERN DISTRICT OF NEW YORK
 3                 CASE NO. 1:20-CV-9251
 4
 5                    ALAN SEWARD,
 6                      Plaintiff
 7
 8                         V.
 9
10          DET. CAMILO R. ANTONINI, ET AL.,
11                     Defendants
12
13
14
15
16
17
18
19
20
21
22
23  DEPONENT:   DET. SGT. SEAN J. FEGAN
24  DATE:       JANUARY 11, 2022
25  REPORTER:   MAGGIE PATTERSON
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

|     |                                                 |
| --- | ----------------------------------------------- |
| 1   | APPEARANCES                                     |
| 2   |                                                 |
| 3   | ON BEHALF OF THE PLAINTIFF, ALAN SEWARD:        |
| 4   | Heather Lewis Donnell, Esquire                  |
| 5   | Loevy & Loevy                                   |
| 6   | 311 North Aberdeen Street                       |
| 7   | 3rd Floor                                       |
| 8   | Chicago, Illinois 60607                         |
| 9   | Telephone No.: (312) 243-5900                   |
| 10  | E-mail: heather@loevy.com                       |
| 11  | (Appeared via videoconference)                  |
| 12  |                                                 |
| 13  | AND                                             |
| 14  |                                                 |
| 15  | Angela Perkins, Esquire                         |
| 16  | The Law Offices of Jarrett Adams                |
| 17  | 40 Fulton Street                                |
| 18  | New York, New York 10038                        |
| 19  | Telephone No.: (646) 880-9707                   |
| 20  | E-mail: angela@jarrettadamslaw.com              |
| 21  | (Appeared via videoconference)                  |
| 22  |                                                 |
| 23  |                                                 |
| 24  |                                                 |
| 25  |                                                 |



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              APPEARANCES (CONTINUED)
 2
 3   ON BEHALF OF THE DEFENDANTS, DET. CAMILO R. ANTONINI,
 4   P.O. ROBERT F. PUFF, DET. SGT. SEAN J. FEGAN,
 5   UNIDENTIFIED MOUNT VERNON POLICE DEPARTMENT EMPLOYEES
 6   AND OFFICERS, THE CITY OF MOUNT VERNON, P.O. MICHAEL
 7   HUTCHINS, POLICE COMMISSIONER GLENN SCOTT, P.O. RAVIN
 8   PALMER, P.O. PATRICK KING, P.O. JOSEPH VALENTE, SGT.
 9   JOSE QUINOY, POLICE COMMISSIONER SHAWN HARRIS, P.O.
10   SEBASTIAN SALAZAR, AND P.O. ROBERT F. KRESSMAN:
11   Anthony J. DiFiore, Esquire
12   Marykate Acquisto, Esquire
13   The Quinn Law Firm
14   399 Knollwood Road
15   Number 220
16   White Plains, New York 10603
17   Telephone No.: (914) 997-0555
18   E-mail: adifiore1@quinnlawny.com
19           macquisto@quinnlawny.com
20   (Appeared via videoconference)
21
22   Also Present: Savanna Squires, Videographer
23
24
25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   conducted as a Mount Vernon police officer?
 2       A    I don't know.  Me personally, or supervised,
 3   or?
 4       Q    I'll break it down into each of those.
 5   You personally.
 6       A    Okay.  I can't give you a count.  I have no
 7   idea.
 8       Q    Why can't you give me an account?
 9       A    It's not an overwhelming amount, but I don't
10   -- I mean, I don't keep a running log of the searches
11   I've done.
12       Q    Do you -- when you personally have been the
13   one conducting a strip search, do you document it?
14       A    When I did it as a detective, it was -- the
15   report documented a search being done.  Yes.
16       Q    What, the incident report?
17       A    The incident report would've documented it.
18   And until 2015, when we instituted a new policy in
19   regards to strip searches, they weren't -- we started
20   wording it in a different way in 2015.
21       Q    Tell me about that.
22       A    It was -- the reports were worded that it was
23   -- the reports should have been worded that the search
24   was authorized, recorded and supervised by whomever. And
25   then we also instituted the filming of the searches,
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   whether it be for audio only, or if there was something
 2   recovered, we would then, at that point, there'd be
 3   video.
 4        Q    Do you have some sort of awareness of
 5   knowledge of why that new policy came into effect in
 6   2015?
 7        A    Yeah.  I was part of the implementing of the
 8   policy.
 9        Q    Okay.  Please.  Did you recommend that the
10   department make those changes?
11        A    I did.
12        Q    Why?
13        A    I was one of the people that did -- because we
14   had gotten a couple complaints on searches we had done,
15   or searches that were not done that we were accused of
16   doing.
17        Q    Okay.  So tell me who, other than yourself was
18   recommending this policy change that came into effect in
19   2015 that involved documenting that search -- strip
20   searches were authorized, supervised, and also reported
21   in some fashion.  Who other than yourself was part of
22   that policy change?
23        A    At that point, there was a Captain Atanero.
24   He was the commanding officer of the detective division.
25        Q    Anyone else?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  This doesn't apply to any other searches on any other
2  arrests. You know, with the basic, you know, pat-down
3  for safety, you know, it doesn't apply to that. It only
4  applies to search warrants itself. Not search -- I'm
5  sorry. If I was saying --
6      Q    Not search -- strip searches -- are you saying
7  strip searches?
8      A    Yes. I'm sorry.
9      Q    Okay. So your testimony that you're giving
10 regarding video recording, you're saying that is only
11 referring to when a strip search is conducted, correct?
12     A    Right. We did not video record every search.
13 Only strip searches.
14     Q    Okay. And that's only post-2015, correct?
15     A    Yes. Whatever the date was in 2015 that the
16 policy was instituted.
17     Q    Is it your testimony that any strip search
18 that you have authorized since this new policy went into
19 effect will have been video recorded?
20     A    Any strip search that I authorized since 2015
21 would've been video recorded.
22     Q    And where are those videos, the DVDs or jump
23 drives, where are they stored?
24     A    Say again, I can't you hear you.
25     Q    Oh, I'm sorry. I'm looking down. Where are

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   those -- you say that the -- when the strip search is
 2   recorded, what is it recorded on?
 3        A    We had a video camera assigned to the
 4   narcotics unit.
 5        Q    And then that video camera, you'd have to
 6   transfer the data onto a CD-ROM?
 7        A    We would transfer it onto a DVD or CD and put
 8   the physical hard copy into evidence.
 9        Q    And is the physical hard copy of any strip
10   search conducted by the narcotics unit since 2015 in
11   each of those specific cases as part of the evidence?
12        A    Yes.
13        Q    So all the video -- it's your testimony that
14   any strip search that you've authorized since this
15   policy came into effect in 2015 will have been recorded
16   and put into evidence?  Is that right?
17        A    Any ones that I was involved in?
18        Q    Yeah.
19        A    Yeah.
20        Q    Have you -- do you have knowledge of any
21   exceptions, a strip search that was conducted and the
22   video camera wasn't working or the CD was misplaced?
23   Anything like that?
24        A    Do I have knowledge of any of those?
25        Q    Yeah.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

        Q     Understood.  Okay.  And then the next column,
is that the accused officers?
        A     Yes.
        Q     And sometimes you have "Narco," does that
mean, like, the narcotics unit?
        A     There was no specific, like, party names.
        Q     Okay.  And then, it looks like the next
column, is that the outcome of the investigation?
Is that your outcome?  Like, your recommendation or just
the final disposition of the investigation?
        A     That's my recommendation.
        Q     Okay.  So -- and it looks to me that each of
these -- for all of these complaints that you were
investigating, your recommendation was either that the
complaint be exonerated or unfounded.
        A     Yeah.  There's a couple unsubstantiateds there
also.
        Q     Okay.  And why don't you -- for the record,
what does it mean when you are recommending an outcome
of exonerated?  What does that mean?
        A     That means like the allegation happened, but
it wasn't -- there was nothing wrong -- it happened, but
there was no violation of any rules and regs, or there
was no -- there was nothing.  The officer didn't do
anything wrong.  The incident happened, but nothing was

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   wrong with what happened.
 2       Q    How about when you're recommending a finding
 3   of unfounded?  What does that mean?
 4       A    Couldn't find any information or facts to
 5   support the -- the complaint itself.
 6       Q    So the complainant made a complaint about
 7   certain allegations, but you were unable to find any
 8   documents on the officer side --
 9       A    Right.
10       Q    -- one way or the other?  That's what
11   unfounded means?
12       A    Yeah.
13       Q    What about if there's a third-party witness?
14   Well, okay.  What if you have witnesses other than the
15   complainant, but no officer documentation?  Can you
16   reach an unfounded recommendation?
17       A    It depends what the witness says.
18       Q    Okay.  And then what does unsubstantiated
19   mean?
20       A    It means it could or couldn't -- could or
21   could not have happened, but there's not enough
22   information either way.
23       Q    Okay.  And then what is the finding that the
24   Mount Vernon Police Department uses for investigations
25   of officers accused of misconduct if the find -- if
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   there's a sustained finding?  Do you use the word
 2   "sustained" or some other word?
 3        A    Substantiated.
 4        Q    You use substantiated?  Okay.  And any here
 5   listed, did you reach a substantiated finding?
 6        A    No.
 7        Q    Let me ask you this, in any of the
 8   investigations of officer misconduct that you've been
 9   involved in -- I'm sorry, is there something?
10            MR. DIFIORE:  No, I just wanted -- you said to
11        close the door --
12            THE WITNESS:  No, the door's opened -- the door
13        has opened or something --
14            MR. DIFIORE:  -- people are walking by.
15   BY MS. DONNELL:
16        Q    Got it.  Okay.  In any of your investigations
17   of officers of -- accused of misconduct that you've
18   conducted, have you ever recommended a substantiated
19   finding?
20        A    No.
21        Q    Have you ever been --
22        A    Can I -- I'm sorry, can I clarify something?
23        Q    Sure.
24        A    These are my narco civilian complaints.  I did
25   a couple when I was a patrol supervisor.  I didn't
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    --
 2         Q    Do you typically -- do you typically do that?
 3    Do you more frequently use your cell phone?
 4         A    No.  When -- when I was in there we more
 5    frequently used the two-way feature on the -- on the
 6    phone.
 7         Q    Okay.  On the department-issued phone?
 8         A    Correct.
 9         Q    So okay.  So tell me -- do you, can you
10    remember anything that Detective Puff said to you when
11    he contacted you, whatever format he used, from the
12    Bungalow Bar?
13         A    He definitely told me they had Alan Seward in
14    custody and that they had recovered an amount of
15    cocaine.  He didn't specify how much.
16         Q    And then, what happened next that you recall?
17         A    They brought him to 156.  I think, what's the
18    apartment, 2N?
19         Q    I think it's 4N.  I think it was 4N.
20         A    4N?  They brought him, they brought him to
21    156, to the apartment.  When we finished up doing our
22    search, we went back to headquarters.
23         Q    Why did you tell Detective Puff to bring Alan
24    to the apartment?
25         A    Generally, we like to have, if possible, the
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   named person in the search warrant, present at the
 2   location while we search.  If it's, if it's, you know,
 3   if it's feasible.
 4       Q    But why, why is that?
 5       A    I mean -- it's their -- it's their property
 6   and it's them that the search warrant's for.  So if --
 7   if someone was doing a search warrant at my house, I'd
 8   want to be there.  So that's -- that's why we do that.
 9   If he said, "No, I don't want to go," we could -- we
10   would've brought him to headquarters.
11       Q    You would agree that Detective Puff could have
12   brought Mr. Seward straight to headquarters.  Correct?
13       A    He, he could have, but I told him if, if
14   Mr. Seward said he didn't want to go to 156?  We would,
15   by all means, let him go right to headquarters, but when
16   they told him they were bringing him back.  If he didn't
17   make any objections, that's why they brought him back.
18       Q    And it's your testimony that your officers
19   would've known that it's your preference to bring the
20   individual whose property is being searched to the
21   location of the search warrant while the search is being
22   conducted?
23       A    Correct.
24       Q    So you wouldn't have had to tell Puff to bring
25   Alan -- Mr. Seward there, that he, Detective Puff,
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of DET. SGT. SEAN J. FEGAN, taken on January 11, 2022
124
Case 7:20-cv-09251-KMK-PED Document 125-10 Filed 09/30/22 Page 14 of 20

```
 1    them up and ready now.  Is it the -- was it
 2    previously marked Exhibit 1?
 3           MS. DONNELL:  Yeah.
 4           COURT REPORTER:  Okay.
 5           MS. DONNELL:  It was previously marked Exhibit
 6  1.
 7           COURT REPORTER:  Right.  Okay.  Perfect. One
 8    second.  All right.  One second.  Can everybody see?
 9           MR. DIFIORE:  Yes.
10           THE WITNESS:  Yes.
11           COURT REPORTER:  All right.  You just let me
12    know when you're ready for me to play it.
13           MS. DONNELL:  Yes.  I think what we'll do is
14    -- let's have you go ahead and play it and then if I
15    need to stop, we'll stop it but right now we're
16    going to play what was previously marked as Exhibit
17    1 but I'm going to mark it as Exhibit 5 based on the
18    notes that we just marked as Exhibit 1 through 4.
19    So we'll note this as Exhibit 5 and this was
20    produced by the defendants in the litigation as I
21    think Exhibit B to their disclosures, so you can go
22    ahead and play it.
23           (VIDEO PLAYED)
24  BY MS. DONNELL:
25     Q    Okay.  Is -- Sergeant Fegan, is what we just
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of DET. SGT. SEAN G. FEGAN, taken on January 11, 2022
Case 7:20-cv-09251-KMK-PED Document 125-10 Filed 09/30/22 Page 15 of 20
125

1 played for you as Exhibit 5, is that the video that you
2 saw a couple times to prepare for your deposition today?
3     A    Yes.
4     Q    Okay. And that's the only video you've ever
5 seen?
6     A    Of that incident, yeah.
7     Q    Of that incident, thank you. Did you
8 recognize the voice of the individual talking on the
9 video camcorder?
10     A    I did. It's Detective Antonini.
11     Q    And did you, are you depicted at any point in
12 that video that you could see?
13     A    Yeah. When -- I mean, you don't see my face
14 but when he turns around from the back room back toward
15 the kitchen, you could see me standing there in, I think
16 in jeans, a t-shirt and blue and white sneakers.
17     Q    Okay. And who's the other officer in the
18 bedroom, if you remember?
19     A    That's, it was Officer Valente at the time,
20 now it's Detective Joseph Valente.
21     Q    Okay. Were there any other officers present
22 that you recall at the time of that video recording
23 other than Valente and Antonini and yourself?
24     A    The guy in front with the red, I think the red
25 sweatshirt. I believe that's officer Salazar.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 7:20-cv-09251-KMK-PED Document 125-10 Filed 09/30/22 Page 16 of 20
The Deposition of Det. Sgt. Sean Cumiskey, taken January 21, 2022
132

```
 1      Q     Do you, as you sit here today, have any
 2   information about any efforts that were done to check
 3   the reliability of the information the CI provided to
 4   Detective Puff prior to executing a search warrant?
 5      A     Well, I do know that outside of the
 6   information from the informant, there was a complaint
 7   lodged by a resident of the building, at 156 South,
 8   First Avenue.  So we took that complaint, spoke to that
 9   complainant that laid out for us what was going on, and
10   then confirmed the legitimacy of the complaint through a
11   confidential form.
12      Q     So in your memory, the information came from
13   the resident of the building complaining first?
14      A     It came from a complaint, yes.  That's, that's
15   how it got started.
16      Q     Okay.  And was the identity of the complainant
17   identified in any reports?
18      A     I believe -- oh.  We knew who it was.  We
19   spoke to her, she left.  She or he, I forget which one
20   it was, left her phone number and name on a message to
21   us.  I, I forget who took the initial phone call but she
22   left her name and cell number for a call back so I
23   called her back.
24      Q     Do you know the name of the individual as you
25   sit here today?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 7:20-cv-09251-KMK-PED Document 125-10 Filed 09/30/22 Page 17 of 20
The Deposition of DET. SGT. SEAN J. FEGAN, taken on January 11, 2022
133

1  MR. DIFIORE: To the extent that he knows or
2  recollects the name, I'll ask that it's pursuant to
3  the confidentiality agreement in case.
4  MS. DONNELL: Sure, that's okay. I'm going to
5  ask you the identity of that person if you know, so
6  I can put this part of direct question under the
7  confidentiality, or is that what you'd like me to
8  do, Anthony?
9  MR. DIFIORE: That'd be perfect. Great.
10 MS. DONNELL: Yeah. Okay. Maggie, can we --
11 MR. DIFIORE: Attorney's eyes only.
12 MS. DONNELL: Okay. Maggie, we're going to
13 designate this portion of the record as attorneys'
14 eyes only.
15         (CONFIDENTIAL PORTION II REDACTED)
16 MR. DIFIORE: That's fine.
17 MS. DONNELL: Okay.
18 COURT REPORTER: I got them. You're good.
19 MS. ACQUISTO: Okay.
20 MS. DONNELL: Thank you.
21 MS. ACQUISTO: Okay.
22 BY MS. DONNELL:
23   Q   Why was none of the rest of the -- well, can
24 you tell me if you know, why nothing else of the search
25 that was conducted was recorded on video, other than

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 7:20-cv-09251-KMK-PED Document 125-10 Filed 09/30/22 Page 18 of 20
The Deposition of DET. SGT. SEAN J. REGAN, taken on January 11, 2022
134

```
 1  that short clip?
 2      A    We don't.  We don't.  You mean the search
 3  warrant itself?
 4      Q    Yes,
 5      A    We don't run.  We don't run for the entirety
 6  of the search warrant.
 7      Q    When do you, I'm sorry.  When do you record?
 8      A    Beforehand.
 9      Q    What do you mean beforehand?
10      A    Before we start to search, we record, so you
11  can see the condition of the apartment.
12      Q    But -- so, your testimony is like, basically
13  all of you showed up to execute the search warrant.
14  You get entry into the apartment and then some of you
15  split up and go to the Bungalow Bar, and then that's
16  when the three or four of you decide to record.  And
17  then you conducted the search?
18      A    Yeah, we take good note beforehand to show the
19  condition of the apartment.
20      Q    Okay.
21      A    Say there, say there's a broken TV in the
22  living room, right?  If we record and we see a broken
23  TV, and they come afterwards and say, "You broke my TV,"
24  we want to have, we want to have video evidence that the
25  TV was not broken beforehand, or was broken.  You know,
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 7:20-cv-09251-KMK-PED    Document 125-10    Filed 09/30/22    Page 19 of 20
The Deposition of DET. SGT. SEAN O. FEGAN, taken on January 11, 2022
135

```
 1  so that's just -- that's just one example,
 2  but that's why we record the entire apartment or house
 3  before we start searching.
 4      Q    Okay.  Tell me what you did, if you recall,
 5  during the search of 156 South First Avenue, Apartment
 6  4N.  Did you conduct any of the search?
 7      A    I don't recall specifically, but generally,
 8  I just supervise the search.  I don't -- unless we're
 9  totally undermanned, I don't search myself.  I
10  supervise.  I make sure everybody's doing their job
11  correctly.
12      Q    Did you -- do you have a memory of observing
13  your other officers search the apartment that day?
14      A    Specifically for that incident?  No, but I --
15  that's generally my responsibility is to supervise
16  everybody on the scene.
17      Q    When -- so, but you don't have a specific
18  recollection of who searched which room or where they
19  looked as you sit here today?
20      A    No, I don't have recollection of who searched
21  where in the apartment, no.
22      Q    Okay.  Do you have a memory of the officers --
23  Detective Puff returning with Alan Seward to the
24  apartment?
25      A    Not specifically, no.  I know they came back,
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 7:20-cv-09251-KMK-PED   Document 125-10   Filed 09/30/22   Page 20 of 20
The Deposition of DET. SGT. SEAN J. FEGAN, taken on January 11, 2022
169

CERTIFICATE OF REPORTER

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page here of by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded stenographically and mechanically by me and then reduced to type written form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel, and that I am in no way interested financially, directly or indirectly, in this action.

MAGGIE PATTERSON,
COURT REPORTER / NOTARY
MY COMMISSION EXPIRES ON: 06/04/2022
SUBMITTED ON: 01/21/2022

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com